**UNITED STATES STEEL CORPORATION, a corporation, Plaintiff,**

v.

**Russell TRAIN, Administrator, United States Environmental Protection Agency, et al., Defendants.**

**Civ. No. 73 H 183.**

United States District Court,
N. D. Indiana,
Hammond Division.

Nov. 22, 1974.

Jay A. Lipe, Hackbert, Rooks, Pitts, Fullagar & Proust, Chicago, Ill., G. Edward McHie, Hammond, Ind., for plaintiff.

Wallace H. Johnson, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., John Wilks, U. S. Atty., N. D. Ind., Fort Wayne, Ind., for defendants.

CONSENT DECREE

ALLEN SHARP, District Judge.

In this Cause, the Court finds that:

The Complaint for judicial review, declaratory judgment and injunction having been filed by Plaintiff herein on July 20, 1973, and a Counterclaim having been filed by Defendants on August 15, 1973, and with Plaintiff and Defendants by their respective attorneys having consented, without trial of any issue of fact or law herein, to the entry of this Consent Decree, and without this Consent Decree constituting any evidence or admission by any party hereto with respect to any issue of fact or law herein:

Now, therefore, before the taking of any testimony, upon the pleadings and upon consent of the parties hereto, and without adjudication of any issue of fact

or law, it is Ordered, Adjudged and Decreed as follows:

I. The Court has jurisdiction over the subject matter herein and the parties hereto for the purpose of entering this Consent Decree.

II. A. It is agreed that all submissions of documents by Plaintiff under this Decree shall be made to the Regional Administrator, Region V (Attn: Enforcement Division), United States Environmental Protection Agency, One North Wacker Drive, Chicago, Illinois 60606.

B. All performance testing referred to herein shall be in accordance with the procedures set forth in 40 C.F.R. Part 60, where applicable, or equivalent procedures where agreed to by the parties.

C. Plaintiff agrees to provide the Regional Administrator, Region V (Attn: Enforcement Division), with ten (10) days notice prior to the conducting of performance tests which are done for the purpose of demonstrating compliance of control facilities following the completion of construction thereof, in order to afford the Regional Administrator an opportunity to have an observer present at such testing.

III. A. In the event that any of Plaintiff's facilities referred to herein shall incur a malfunction, as hereinafter defined, Plaintiff agrees to remedy such malfunction as soon as reasonably possible thereafter and to take all reasonable steps to control emissions during the malfunction. "Malfunction" is defined as any sudden failure of air pollution control equipment, or of process equipment, or of a process, to operate in a normal or usual manner, which causes or is likely to cause emissions of particulate matter substantially greater than those emissions generated during normal operations. Plaintiff agrees to take such steps as in its judgment are reasonably necessary to prevent and minimize falfunctions on facilities referred to herein.

B. Plaintiff agrees to continue its present practice of notifying the Gary Air Pollution Control Division of such malfunctions and shall keep a record of each such notification. At the close of each calendar quarter Plaintiff agrees to provide a copy of such records of all such notifications for the preceding calendar quarter to the Regional Administrator of Region V of the United States Environmental Protection Agency.

C. Copies of the quarterly progress reports called for in paragraph 2 of both of the Agreed Findings of Fact and Orders in the matter of the City of Gary v. United States Steel Corporation, adopted May 30, 1973, by the Indiana Air Pollution Control Board, and reaffirmed thereby on July 12, 1973, shall be submitted to the Regional Administrator, Region V, United States Environmental Protection Agency on a quarterly basis, commencing April 1, 1974, and continuing thereafter until December 31, 1976.

D. Plaintiff shall submit as part of each quarterly report called for in subparagraph C hereof, as to any action called for hereby other than the submission of performance test results, certification to the Regional Administrator, Region V (Attn: Enforcement Division), stating whether such action has been taken within the period of time covered by that quarterly report. In the event that any such action is not taken within the time specified in this Consent Decree, Plaintiff shall give written notification of that fact to the Regional Administrator within fifteen (15) days thereof, specifying the reasons therefor.

IV. Plaintiff agrees, with respect to its Coke Plant Boiler House at Gary Works, to achieve compliance with Indiana Air Pollution Control Regulation APC-3, from and after the effective date of this Consent Decree.

V. Plaintiff agrees to complete the following acts with respect to its Tin Mill Boiler House at Gary Works on or before the following dates:

(i) January 1, 1975—complete plans.

(ii) March 1, 1975—award purchase and installation contracts.

(iii) October 1, 1975—start construction.

(iv) July 1, 1976—complete construction.

(v) July 30, 1976—complete source performance tests and submit results; achieve compliance with Indiana Air Pollution Control Regulation APC4R by Tin Mill Boiler House.

VI. Plaintiff agrees to complete the following acts with respect to its Open Hearth Shops Nos. 3 and 4 at Gary Works;

1. No. 3 Open Hearth Shop was closed on December 31, 1973.

2. No. 4 Open Hearth Shop shall be closed as soon as No. 2 Q–BOP Shop at Gary Works is able to produce consistently 350,000 tons of steel per month, but no later than December 31, 1974.

VII. Plaintiff agrees to undertake a program of Rehabilitation and Abatement of existing coke oven batteries at the Gary Works together with replacement of certain batteries as set forth below. Said program shall include the actions listed below with respect to specific coke oven batteries by selective repair or replacement of various battery components designed to accomplish optimum battery operation and reduced emissions from doors, topsides, and combustion stacks. Battery operation and reduced emissions shall be maintained by a responsible surveillance, operating and maintenance program to include stage charging. The parties agree that this program is designed to bring batteries Nos. 1, 5, 7, 13, 15 and 16 of Plaintiff's Coke Plant into compliance with Indiana Air Pollution Control Regulations

APC–3 and APC–5. It is agreed that failure of Plaintiff's program, when completed, to achieve compliance with the requirements of the applicable regulations will not be deemed a violation of this Decree. The parties have been unable to resolve the issues relating to coke batteries Nos. 10, 12 and 14; this decree does not encompass any such issues and is without prejudice to the rights of the parties in regard to batteries Nos. 10, 12 and 14. To implement its proposed Coke Plant Rehabilitation and Abatement Program, Plaintiff agrees to complete the following acts with respect to Batteries Nos. 1, 5, 7, 13, 15 and 16 at Gary Works on or before the following dates:

A.  Coke Battery No. 1.

   (i) September 1, 1974—award purchase contracts.

   (ii) April 30, 1976—complete abatement program.

B.  Coke Batteries Nos. 5 and 7.

   (i) January 1, 1975—award purchase contracts.

   (ii) November 30, 1976—complete abatement program.

C.  Coke Battery No. 13.

   (i) February 28, 1975—complete abatement program.

D.  Coke Battery No. 15.

   (i) September 1, 1974—award purchase contracts.

   (ii) June 30, 1976—complete abatement program.

E.  Coke Battery No. 16.

   (i) August 1, 1974—award purchase contracts.

   (ii) March 31, 1976—complete rehabilitation and abatement program.

At the completion of the Plaintiff's proposed Rehabilitation and Abatement Program at any battery, if the battery is not in compliance, the parties agree to meet to determine the course of action to be followed. In the further event that the parties are unable to reach agreement on the course of action to be followed, either party may submit the matter to the court for resolution and modification of this decree as required.

VIII.  Plaintiff has shut down its Foundry Open Hearth Furnace. However, Plaintiff may elect to install controls on the Foundry Open Hearth in accordance with a compliance schedule, provided that approval is given by the State of Indiana Department of Health and the Division of Air Pollution Control of the Department of Health of the City of Gary, Indiana. Plaintiff shall have the right to operate the Foundry Open Hearth Furnace during the period of installation of such control program provided that the Foundry Open Hearth Furnace shall not operate after July 1, 1975, unless it is in compliance with Indiana APC 3 and 5.

IX.  Plaintiff agrees to complete the following acts with respect to its scarfing operations at Gary Works on or before the following dates:

1.  Rail Mill and 46″ Slab Mill Scarfing Operations:

   (i) January 1, 1975—start construction.

   (ii) August 1, 1975—complete construction.

   (iii) September 1, 1975—complete source performance tests and submit results; achieve compliance with Indiana Air Pollution Control Regulation APC–5 by the Rail Mill scarfing operation, and with Indiana Air Pollution Control Regulations APC–3 and APC–5 by the 46″ Slab Mill Scarfing Operation.

2.  Three Billet Mill Scarfers:

   (i) January 1, 1975—start construction.

   (ii) August 1, 1975—complete construction.

   (iii) September 1, 1975—complete source performance tests and submit results; achieve compliance with Indiana Air Pollution Control Regulation APC–5.

X.  Plaintiff agrees to complete the following acts with respect to its hard slag processing operation at Gary Works on or before the following dates:

September 1, 1974—complete installation of a water system for particulate emission control designed to achieve compliance with applicable Indiana Air Pollution Control Regulations. It is agreed, however, that the failure of Plaintiff's proposed system when completed to achieve compliance with such applicable regulations will not be deemed a violation of this Decree. If, subsequent to the installation of such a water system, the emissions from the hard slag processing operations do not achieve compliance with applicable regulations, the parties agree to meet to determine the course of action to be followed. In the further event that the parties are unable to reach agreement on the course of action to be followed, either party may submit the matter to the Court for resolution and modification of this Decree as required.

XI.  Plaintiff agrees that its No. 3 Sinter Plant at Gary Works shall be controlled by restoring the electrostatic precipitators to achieve original design outlet loading of 0.05 grains per dry standard cubic foot which is generally equivalent to 0.1 lbs. of particulate per 1000 lbs. of exit gas as required by Indiana APC–5 in accordance with the following schedule:

1.  August 1, 1974—complete final plans.

2.  September 1, 1975—start construction.

3.  July 1, 1976—complete construction. It is agreed, however, that the failure of Plaintiff's proposed restoration program for its No. 3 Sinter Plant, when com-

pleted, to achieve compliance with APC–3 and APC–5 will not be deemed a violation of this Decree. Compliance with APC–5 shall be deemed compliance with existing APC–3. If, subsequent to the completion of Plaintiff's restoration program for the No. 3 Sinter Plant, the emissions therefrom are not in compliance with APC–5, the parties agree to meet to determine the course of action to be followed. In the further event that the parties are unable to reach agreement on the course of action to be followed, either party may submit the matter to the Court for resolution and modification of this Decree as required.

XII. Plaintiff agrees to complete the following acts on its Universal Atlas Cement Division Harbor Cement Plant on or before the following dates:

1. March 1, 1975—complete construction of control facility.

2. April 1, 1975—complete source performance tests and submit results; achieve compliance with Indiana Air Pollution Control Regulations APC–3 and APC–5.

XIII. Nothing herein contained shall prevent Plaintiff from operating any facility herein agreed to be closed down, provided that at the time of operation it is in full compliance with all applicable requirements of the Clean Air Act and regulations in force at that time, and nothing herein contained shall prevent Plaintiff from complying with applicable Federal laws and regulations by choosing to close down any facility rather than controlling the same.

XIV. Plaintiff's obligation to meet any requirement set out in this Consent Decree, including achievement of compliance with any specific emission standard or regulations, shall be excused to the extent caused by Act of God or the public enemy, abnormal weather conditions, accidental fire or explosion, flood, war, riot, sabotage, accident which is not caused by Plaintiff's negligence or any other circumstance beyond the reasonable control of plaintiff. If Plaintiff should anticipate any delay in excess of thirty days in the completion of any construction required hereunder to be performed by Plaintiff, Plaintiff shall promptly notify the Regional Administrator. Thereafter, the parties shall stipulate to the modifications of this Consent Decree, or failing agreement on such stipulation, shall submit the matter to this Court for modification of this Consent Decree.

XV. Nothing herein shall be construed to grant to Plaintiff immunity from enforcement of the requirements of the Clean Air Act, 42 U.S.C. § 1857 et seq. for facilities or processes or applicable regulations other than those specified herein. In the event of noncompliance with the terms of this Consent Decree, enforcement hereof shall be by this Court upon timely application of a party.

XVI. This Decree shall not be construed as a waiver of any other rights, if any, of the parties arising under the Clean Air Act or other applicable rules and regulations, or of the rights of any party to contest the applicability of the Clean Air Act or any such rules and regulations.

XVII. The Order of June 22, 1973, which is the subject matter of this action, is vacated with respect to coke batteries 10, 12 and 14, and is modified with respect to those facilities encompassed herein so as to impose no obligations upon Plaintiff other than those imposed by this Consent Decree. Said Order shall remain in force and effect solely for the purpose of maintaining the jurisdiction of this Court. Jurisdiction is retained by this Court for the purpose of enabling either of the parties to this Decree to apply to the Court at any time for such further orders and directions as may be necessary or appropriate for the construction and effectuation of this Consent Decree.

XVIII. Counter-defendants Walker, Mallick, Jackson, Carr and Adams are dismissed as parties to this action, and it is agreed that any action to enforce the terms of this Consent Decree shall be taken only against United States Steel Corporation.

XIX. This Consent Decree shall remain effective and in force only until the latest date of any action required hereunder is completed, plus one month, or as hereafter modified. This Consent Decree and any plan or schedule incorporated therein may be modified by agreement of the parties.